UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY ANTHONY FRANKLIN,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE GIURBINO, et al.,<br><br>Defendants. | Case No. 15-cv-04755-YGR (PR)<br><br>**ORDER SERVING COGNIZABLE EIGHTH AMENDMENT CLAIM; AND DISMISSING REMAINING CLAIMS** |

## I.   INTRODUCTION

Plaintiff Jeffrey Anthony Franklin, a state prisoner currently incarcerated at California State Prison – Sacramento, has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants at the California Department of Corrections and Rehabilitation ("CDCR") and at Pelican Bay State Prison (where he was previously incarcerated in 2014) have violated his constitutional rights.  Plaintiff seeks injunctive relief and monetary damages.

Plaintiff's motion for leave to proceed *in forma pauperis* will be granted in a separate written Order.

Venue is proper because some of the events giving rise to the claim are alleged to have occurred at PBSP in Del Norte County, which is located in this judicial district.  *See* 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants from the CDCR and PBSP: Governor Edmund G. Brown, Jr.; Secretaries Matthew Cate and Jeffrey Beard; Deputy Director George Giurbino; Director Suzan Hubbard; Chiefs D. Rothschild, Anthony Chaus, and Mike Ruff; Warden Greg Lewis; and Institutional Gang Investigator Jeremy Frisk.

## II.   DISCUSSION

### A.   Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

### B.    Legal Claims

Plaintiff claims that he is a class member in the recently-settled class action brought by PBSP prisoners housed in the SHU, *Ashker v. Brown*, No. C 09-5796 CW (N. D. Cal. filed 2009). Dkt. 1 at 6.[1] *Ashker* created two classes of plaintiffs. First, there is a "Due Process Class" consisting of "all inmates who are assigned to an indeterminate term at the Pelican Bay SHU on the basis of gang validation, under the policies and procedures in place as of September 10, 2012." *Ashker*, No. C 09-5796 CW, Dkt. 317 at 21. Second, there is an "Eighth Amendment Class" of "all inmates who are now, or will be in the future, assigned to the Pelican Bay SHU for a period of more than ten continuous years." *Id.*

It appears that Plaintiff could belong to at least one of the two classes. He could belong to the first class because he claims that he was housed in PBSP's SHU on the basis of an October 2014 rules violation report, in which he was found guilty of possession of "gang writing" in his cell. Dkt. 1 at 7. Because Plaintiff claims to be a class member in *Ashker*, the Court assumes that Plaintiff was eventually assigned to an indeterminate term at the SHU on the basis of gang validation. *Id.*

Plaintiffs in the *Ashker* class action claim that long-term detention in PBSP's SHU violates

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

2

the Eighth Amendment due to the harsh conditions of confinement. Plaintiffs also claim that the policies and practices regarding review and continued retention of gang affiliates in PBSP's SHU violate due process. The *Ashker* classes were certified in an order issued on June 2, 2014. *Ashker*, No. C 09-5796 CW, Dkt. 317. On September 1, 2015, the parties informed the court that they entered into a settlement agreement that would settle all claims for relief asserted in this case, including ending indeterminate solitary confinement in prisons across California, stopping the use of "gang affiliation" as a basis for placing inmates in isolation, dramatically reducing the number of inmates in solitary confinement, and creating a new "Step Down Program" designed to return those sent to the SHU to general population in two years or less. *Id.*, Dkt. 424. On October 14, 2015, the court granted preliminary approval of the settlement agreement. *Id.*, Dkt. 445. On January 26, 2016, the court granted final approval of the settlement agreement. *Id.*, Dkt. 488.

In the instant action, Plaintiff alleges that on March 10, 2014, he appeared before the Department Review Board ("DRB") for consideration for placement into the CDCR's "Step Down Program," ("SDP"), which is the program that resulted from the aforementioned settlement in the *Ashker* class action. Dkt. 1 at 6. According to the CDCR's website, the SDP is an incentive-based, multi-step process that provides offenders placed in the SHU, like Plaintiff, the opportunity to earn enhanced privileges by refraining from participation in Security Threat Group affiliations and behaviors. The ultimate goal of SDP is to release the offender from the SHU.

Plaintiff alleges that Defendants decided to place him in the SDP at "Step four" ("S4"), and "by doing so Defendants ordered [him to be] transferred from PBSP-SHU to the SHU at California Correctional Institution ("CCI") . . . ." *Id.* at 6-7. Plaintiff further claims that Defendants placed him in the S4 of SDP "in order to mute-out [sic] his status as a class plaintiff." *Id.* at 7. Thus, Plaintiff claims that by having him "transferred out of PBSP-SHU in order to mute [sic] his status within the [*Ashker* class action]," Defendants were "deliberate[ly] indifferent to his serious medical conditions and needs." *Id.* Specifically, Plaintiff claims that he "had a high risk medical hold on him since 2012 up to and including April 2014 in which for health reasons transferring or placing him in prisons with a high risk of valley fever infection such as [Deuel] Vocational Institute ("DVI") and CCI, was prohibited." *Id.* at 7-8. However, Defendants

3

"deliberately disregarded [his] serious health conditions and needs by knowingly failing to object to and/or remonstrate despite having the authority to do so, against sending (transferring/placing) Plaintiff in further harms way by subjecting him to being house in the valley fever area one and area two prisons." *Id.* at 8. Plaintiff claims that on April 28, 2014, Defendants Lewis, Rothschild and "John Doe[s] 1-5" "rescinded all of the prison 602 appeals third level decisions [that] recommend[ed] medical treatments in order to clear the way to have Plaintiff transferred and placed in harms way." *Id.* at 9. Plaintiff alleges that a "medical chrono authored by a PBSP-SHU Registered Nurse ("RN") had undermined Plaintiff's medical hold which directly conflicted with the prison['s] 602 appeal's decision." *Id.* And that Defendant Rothschild "used said chrono to authorize placing Plaintiff on the bus on May 2, 2014 in order to be transferred at rehoused at CCI . . . in the SDP-S4." *Id.* at 9-10.

Plaintiff also claims that he was later housed in a "totally unclean, unsanitary, and filthy prison without proper ventilation and proper court and constitutionally mandated recreation outside of the prison cell for a minimum of ten (10) hours per week at DVI and then . . . at CCI . . . from May 9, 2014 up to and including August 26, 2015, where Plaintiff was required to be housed for a minimum of one (1) year per the SDP-S4 policy at the severe risk of deteriorating his health further." *Id.* at 8-9.

### 1. Injunctive Relief Claims

As mentioned above, Plaintiff seeks and injunctive relief as well as monetary damages. The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and no reasonable expectation or demonstrated probability exists that he will again be subjected to the prison or jail conditions from

4

which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison or jail where the injury occurred is too speculative to overcome mootness. *Id.*

When Plaintiff filed the instant action, he was still incarcerated at CCI. Plaintiff sought injunctive relief to remedy his alleged injuries stemming from various constitutional violations at PBSP, DVI and CCI. However, the record now shows that he has since been transferred to California State Prison - Solano. Because Plaintiff is no longer incarcerated at PBSP, DVI, or CCI, his claims for injunctive relief based on his confinement at these prisons are DISMISSED as moot. The Court proceeds to review Plaintiff's remaining claims for monetary damages.

### 2. Claims Relating to Conditions of Confinement at DVI and CCI

Plaintiff complains of various problems during his incarceration at DVI and CCI, where he was housed after he was transferred out of PBSP on May 9, 2014. Dkt. 1 at 8-13. Because both DVI and CCI are located within the venue of the Eastern District of California, any such claims are DISMISSED without prejudice to Plaintiff refiling them in a new civil rights action in the United States District Court for the Eastern District of California. *See In re Hall*, 939 F.2d 802, 804 (9th Cir. 1991) (dismissal on venue grounds without prejudice).

### 3. Eighth Amendment Claim

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "[u]nnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of

serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff alleges that he suffers from serious medical needs, specifically he was put on a medical hold from 2012 through April 2014. Dkt. 1 at 8. Plaintiff claims that the aforementioned actions of Defendants Giurbino, Hubbard, Rothschild, Chaus, Ruff, Lewis, and Frisk showed they were deliberately indifferent to his serious medical needs because they deliberately disregarded his serious health conditions (i.e., his medical hold) by failing to object to Plaintiff's transfer to DVI and CCI in May 2014. Liberally construed, Plaintiff's allegations relating to the aforementioned actions state a cognizable claim for deliberate indifference to his serious medical needs against these Defendants.

### 4. Supervisory Liability Claim

Plaintiff sues Defendants Brown, Cate, and Beard in their supervisory capacities. Plaintiff does not allege facts demonstrating that these Defendants violated his federal rights, but seems to claim they are liable based on the conduct of their subordinates, the other named Defendants in this action. There is, however, no respondeat superior liability under section 1983 solely because a defendant is responsible for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* A supervisor may also be held liable if he or she implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). Plaintiff's supervisory liability claim against Defendants Brown, Cate, and Beard is therefore DISMISSED without prejudice.

### 5. Claim Against Doe Defendant

Plaintiff identifies "John Doe[s] 1-5" whose names he intends to learn through discovery. The use of Doe Defendants is not favored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to

identify them. *Id*. Failure to afford the plaintiff such an opportunity is error. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the claims against "John Doe[s] 1-5" are DISMISSED from this action without prejudice. Should Plaintiff learn these Doe Defendants' identities through discovery, he may move to file an amended complaint to add them as named defendants. *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Because Plaintiff is no longer incarcerated at PBSP, DVI, or CCI, his claims for injunctive relief based on his confinement at these prisons are DISMISSED as moot.

2. Because both DVI and CCI are located within the venue of the Eastern District of California, any claims relating to conditions of confinement at these prisons are DISMISSED without prejudice to Plaintiff refiling them in a new civil rights action in the United States District Court for the Eastern District of California.

3. Plaintiff's allegations relating to the actions of Defendants Giurbino, Hubbard, Rothschild, Chaus, Ruff, Lewis, and Frisk state a cognizable claim for deliberate indifference to his serious medical needs against these Defendants.

4. Plaintiff's supervisory liability claim against Defendants Brown, Cate, and Beard is therefore DISMISSED without prejudice.

5. The claims against the Doe Defendants are DISMISSED without prejudice.

6. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto and a copy of this Order to: **Deputy Director George Giurbino, Director Suzan Hubbard, and Chiefs D. Rothschild, Anthony Chaus, and Mike Ruff at the CDCR; and to Warden Greg Lewis and Institutional Gang Investigator Jeremy Frisk at PBSP.** The Clerk shall also mail a copy of the complaint and a copy of this Order to State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

7

7. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, Defendants will be required to bear the cost of such service unless good cause be shown for the failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

8. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a. No later than **sixty (60) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[2] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice.

---

[2] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

8

1  However, the Court notes that under the new law of the circuit, in the rare event that a failure to
2  exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule
3  12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion.
4  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108,
5  1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under
6  the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an
7  unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the
8  complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary
9  judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to
10 Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56.
11 *Id.* But if material facts are disputed, summary judgment should be denied and the district judge
12 rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.
13   If Defendants are of the opinion that this case cannot be resolved by summary judgment,
14 Defendants shall so inform the Court prior to the date the summary judgment motion is due. All
15 papers filed with the Court shall be promptly served on Plaintiff.
16   b.   Plaintiff's opposition to the dispositive motion shall be filed with the Court
17 and served on Defendants no later than **twenty-eight (28) days** after the date on which
18 Defendants' motion is filed.
19   c.   Plaintiff is advised that a motion for summary judgment under Rule 56 of
20 the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you
21 must do in order to oppose a motion for summary judgment. Generally, summary judgment must
22 be granted when there is no genuine issue of material fact—that is, if there is no real dispute about
23 any fact that would affect the result of your case, the party who asked for summary judgment is
24 entitled to judgment as a matter of law, which will end your case. When a party you are suing
25 makes a motion for summary judgment that is properly supported by declarations (or other sworn
26 testimony), you cannot simply rely on what your complaint says. Instead, you must set out
27 specific facts in declarations, depositions, answers to interrogatories, or authenticated documents,
28 as provided in Rule 56(c), that contradicts the facts shown in the defendant's declarations and

9

1  documents and show that there is a genuine issue of material fact for trial. If you do not submit
2  your own evidence in opposition, summary judgment, if appropriate, may be entered against you.
3  If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154
4  F.3d at 962-63.

5  Plaintiff also is advised that—in the rare event that Defendants argue that the failure to
6  exhaust is clear on the face of the complaint—a motion to dismiss for failure to exhaust available
7  administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without
8  prejudice. To avoid dismissal, you have the right to present any evidence to show that you did
9  exhaust your available administrative remedies before coming to federal court. Such evidence
10 may include: (1) declarations, which are statements signed under penalty of perjury by you or
11 others who have personal knowledge of relevant matters; (2) authenticated documents—
12 documents accompanied by a declaration showing where they came from and why they are
13 authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements
14 in your complaint insofar as they were made under penalty of perjury and they show that you have
15 personal knowledge of the matters state therein. As mentioned above, in considering a motion to
16 dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment
17 motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed
18 issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

19 (The notices above do not excuse Defendants' obligation to serve similar notices again
20 concurrently with motions to dismiss for failure to exhaust available administrative remedies and
21 motions for summary judgment. *Woods*, 684 F.3d at 935.)

22     d.    Defendants shall file a reply brief no later than **fourteen (14) days** after the
23 date Plaintiff's opposition is filed.

24     e.    The motion shall be deemed submitted as of the date the reply brief is due.
25 No hearing will be held on the motion unless the Court so orders at a later date.

26 9. Discovery may be taken in this action in accordance with the Federal Rules of Civil
27 Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to
28 depose Plaintiff and any other necessary witnesses confined in prison.

10. All communications by Plaintiff with the Court must be served on Defendants or Defendants' counsel, once counsel has been designated, by mailing a true copy of the document to them.

11. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

12. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

Dated: March 29, 2016

YVONNE GONZALEZ ROGERS
United States District Judge

11